Joseph **BARBARA**, Jr., Petitioner-Appellee,

v.

Perry **JOHNSON**, Warden of the State Prison of Southern Michigan, Respondent-Appellant.

No. 71-1029.

United States Court of Appeals, Sixth Circuit.

Oct. 19, 1971.

Stewart H. Freeman, Asst. Sol. Gen., Lansing, Mich., for respondent-appellant; Frank J. Kelley, Atty. Gen., Robert A. Derengoski, Sol. Gen., Lansing, Mich., on brief.

Neil Howard Fink, Detroit, Mich., for petitioner-appellee; Joseph W. Louisell, Detroit, Mich., on brief.

Before PHILLIPS, Chief Judge, and BROOKS and KENT, Circuit Judges.

BROOKS, Circuit Judge.

This is an appeal from an order of the District Court granting a writ of habeas corpus to petitioner-appellee, Joseph Barbara, Jr. Barbara was convicted in the state court of the crime of extortion and his conviction was affirmed on appeal. People v. Barbara, 23 Mich.App. 540, 179 N.W.2d 105, leave to appeal denied July 16, 1970. Barbara then petitioned the District Court for a writ of habeas corpus alleging that his constitutional right to a fair trial had been violated. Specifically, Barbara contended certain unresponsive answers made during this trial by two prosecution witnesses on cross-examination tended to connect him with the Mafia. He argued the answers were so prejudicial as to deny him a fair trial by an impartial jury. The State of Michigan maintained that Barbara's attorney deliberately asked questions calculated to bring out references to the Mafia for the purpose of inviting error and a mistrial. Also, it maintained that no prejudice resulted from the references that were allegedly provoked and that the jury was properly instructed to disregard any such references as may have indicated any prejudicial tendency. In holding pe-

titioner's constitutional due process rights were violated, the District Court ruled that the cumulative effect of the references was inherently prejudicial and not cured by the trial court's cautionary instructions to the jury to disregard them. We disagree and reverse.

The two principal witnesses for the prosecution in the state court were Mrs. Delores Lazaros and her husband, Peter Lazaros, who allegedly was a close friend of petitioner. Mrs. Lazaros testified that while her husband was in prison, Barbara came to her home on several occasions and, by threatening her life and the lives of her husband and their infant son, succeeded in raping and extorting money from her. Upon the release of her husband from prison, she told him of the incidents and together they informed the authorities, resulting in Barbara's indictment, trial and conviction.

Both Barbara and Lazaros had previously been widely publicized in the local press as members of the Mafia, and their reputations were well known to the trial judge and the attorneys. It was for this reason that the trial judge had the witnesses instructed before they testified not to mention the word "Mafia" unless directly asked a question which would require its use. The word "Mafia" was mentioned one time during the course of the trial that lasted for 8 days, and there were also other references such as "these people", "your people", "them", and the name of a well publicized Mafia informer was mentioned. It is upon these testimonial responses that petitioner relies to support his contention that he was deprived of a fair and impartial trial.

During trial Lazaros was subject to a lengthy, severe and often abusive cross-examination. Late in the cross-examination defense counsel, with full knowledge of his client's and Lazaros' alleged associations with the Mafia, probed him concerning the collateral issue of petitioner's allegedly bribing Internal Revenue agents and also the Mayor of Detroit.[1] Lazaros' response mentioned the word "Mafia" and immediately a motion was made for a mistrial. The judge struck the answer and admonished the jury to disregard it. In denying the motion, he said out of the presence of the jury " * * * this word that we're concerned with has not been emphasized before this jury. This Court is of the opinion that the action of this Court in striking the answer * * * has protected the rights of this defendant. I'm satisfied that this jury will follow the Court's instructions." The trial judge also, at appropriate times, instructed the jury to disregard other irrelevant and volunteered responses of the witnesses.

As the record discloses, the crime for which petitioner was convicted with all its sordid details, the association of petitioner and Lazaros with the Mafia, their backgrounds, temperaments and reputations, the antagonism existing between Lazaros and defense counsel, who apparently at one time had represented him, all contributed to create a trial charged with emotion. In such a setting, and even without provocation, spontaneous and unresponsive statements may be all but impossible to prevent. With provocation they are to be expected.

The trial strategy adopted by the defense was inherently provocative. Its aim was to completely destroy the credi-

---

1. "Q. All right. Isn't it true that you've made other accusations against Mr. Barbara, other than the accusation here made by your wife?
A. What you mean by that? Will you explain to me?
Q. Yes, I'll be happy to. Isn't it true that you have made a statement or statements, to certain law enforcement agencies, that at the Kingsley Inn, on or about December the 17th of 1967, Mr. Barbara paid a bribe, not only to certain Internal Revenue agents, but also to Mayor Cavanagh of the City of Detroit?
A. Let me say this to you, while you want to know [defense counsel], Mr. Barbara, at that time he delivered the money, representing the Mafia, to give—
[Defense counsel] All right, your Honor, I move for a mis-trial.
A. You asked me."

bility of the two principal witnesses for the prosecution. And in attacking their credibility, evidence was induced, primarily on the cross-examination of Peter Lazaros, of numerous collateral matters [2] which had no direct application to the crime of extortion for which petitioner was being tried. This evidence of collateral matters, however, successfully portrayed petitioner and Lazaros as being sinisterly linked with organized crime. Thus, a substantial doubt is presented as to whether the fleeting references to the Mafia could reasonably be presumed to have deprived petitioner of a fair trial, even in the absence of cautionary instructions.

The general rule is that the subsequent striking of erroneously admitted evidence accompanied by a clear and positive instruction to disregard it cures the error unless the evidence is of such an exceptionally prejudicial character that its withdrawal from the consideration of the jury cannot remove the harmful effect caused by its admission. Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968); United States v. Greene, 400 F.2d 847, 848 (6th Cir. 1968); United States v. Farber, 336 F.2d 586, 589 (6th Cir. 1964); United States v. Levinson, 405 F.2d 971 (6th Cir. 1968), cert. denied, Strang v. United States, 395 U.S. 906, 89 S.Ct. 1746, 23 L.Ed.2d 219 (1969), cert. denied Howard v. United States, 395 U.S. 958, 89 S.Ct. 2097, 23 L.Ed.2d 744 (1969), and Levinson v. United States, 395 U.S. 958, 89 S.Ct. 2097, 23 L.Ed.2d 744 (1969), rehearing denied, 396 U.S. 869, 90 S.Ct. 37, 24 L.Ed.2d 124 (1969). The rationale for the general rule is set forth in Bruton v. United States, *supra*, 391 U.S. at page 135, 88 S.Ct. at page 1627:

"Not every admission of inadmissible hearsay or other evidence can be considered to be reversible error unavoidable through limiting instructions;

instances occur in almost every trial where inadmissible evidence creeps in, usually inadvertently. 'A defendant is entitled to a fair trial but not a perfect one.' Lutwak v. United States, 344 U.S. 604, 619 [73 S.Ct. 481, 97 L. Ed. 593]; see Hopt v. Utah, 120 U.S. 430, 438 [7 S.Ct. 614, 30 L.Ed. 708]; cf. Fed.Rule Crim.Proc. 52(a). It is not unreasonable to conclude that in many such cases the jury can and will follow the trial judge's instructions to disregard such information. Nevertheless, as was recognized in Jackson v. Denno, supra, [378 U.S. 368, 84 S. Ct. 1774, 12 L.Ed.2d 908], there are some contexts in which the risk that the jury will not, or cannot, follow instructions is so great, and the consequences of failure so vital to the defendant, that the practical and human limitations of the jury system cannot be ignored."

The authorities also agree, particularly where the allegedly prejudicial evidence came through or was provoked by the defense, the burden of establishing that the accused was unfairly treated rests upon the accused. United States ex rel. Darcy v. Handy, 351 U.S. 454, 462, 76 S.Ct. 965, 100 L.Ed. 1331 (1956); Adams v. United States ex rel. McCann, 317 U.S. 269, 281, 63 S.Ct. 236, 87 L.Ed. 268 (1942); United States v. Rubino, 431 F.2d 284 (6th Cir. 1970). And as stated in United States ex rel. Darcy v. Handy, *supra*, 351 U.S. at page 462, 76 S.Ct. at page 970, it is necessary " * * * that it [the burden of proof] be sustained not as a matter of speculation but as a demonstrable reality."

Applying these rules to the bizarre circumstances of this case and having considered the complete transcript of the trial, we conclude as did the state judge and the Michigan Supreme Court that even if the challenged testimony could be deemed prejudicial, its effects were cured by the cautionary instructions of

---

2. e. g. Threats to kill; bodyguards; bribery; $130,000 swindle; blackmail; legal fees paid of $150,000, $200,000; and intimations of alleged judicial improprieties in high places.

**1238**

the court. Petitioner has failed to establish that he was deprived of his constitutional right to a fair trial.

The order granting the writ of habeas corpus is vacated and this proceeding is remanded to the District Court with instructions to dismiss the petition.