**NOT RECOMMENDED FOR PUBLICATION**
File Name: 04a0132n.06
Filed: November 29, 2004

**No. 03-3014**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| Brian K. Alford, | ) | |
| | ) | |
| Defendant-Appellant, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE UNITED |
| | ) | STATES DISTRICT COURT FOR |
| | ) | THE SOUTHERN DISTRICT OF |
| United States of America, | ) | OHIO |
| | ) | |
| Plaintiff-Appellee. | ) | |

Before: SILER, BATCHELDER, and ROGERS, Circuit Judges

**PER CURIAM**. Defendant, Brian K. Alford, appeals his convictions for bank robbery and use of a firearm in the commission of a felony. Alford argues that the prosecutor improperly impeached a government witness with the witness's unsworn prior inconsistent statement. He asserts the district court should have declared a mistrial after the improper impeachment was stricken from the record. Because any error was cured by the district court's instructions to the jury, we AFFIRM.

**BACKGROUND**

In 2000, a masked gunman robbed a BankOne branch in Dayton, Ohio. Witnesses described the robber as being a black male, approximately 25-35 years in age, between five feet nine inches and six feet two inches in height, and 155-190 pounds in weight. He was wearing a surgical mask and a hat, and carrying a dark bag and a silver automatic handgun. A teller inserted a dye pack into

the bag along with money.  After leaving the bank, the robber was later observed sitting in a parked car "picking at a bag that was smoking."  The car was described as a 1989 or 1990 Oldsmobile, reddish in color, with a license plate number of "ANN 1778."  The bag, containing a blue surgical mask, cash, and BankOne money wrappers, was subsequently recovered and returned to the bank by a pedestrian.

The license plate belonged to a 1993 Oldsmobile registered to Alford's sister.  The vehicle was found near the home of another sister.  A wallet belonging to Alford was recovered from the vehicle.  The car smelled strongly of air freshener; however, no dye stains were discovered.  In a trash can behind the house, police recovered dye-stained clothing approximate to that worn by the bank robber.  Police then interviewed Alford's girlfriend, Kim Jones.  Jones wrote out a signed, but unsworn, statement at the police station.  In it she described conversations with Alford on the day of the robbery.  Based on this statement, the police retrieved a shirt stained with red dye  and a silver automatic pistol.  All items of evidence recovered were analyzed further by the crime laboratory.  No DNA evidence was discovered; however, the red dye was consistent with the marking dye used by BankOne.

Jones was called by the prosecution during trial, and, although she acknowledged the prior statement she made to the police, she was uncooperative.  The next day the court held a conference to discuss the admissibility of Jones's testimony, and examined her on voir dire.  The court found the prosecution no longer had a reasonable belief that Jones would cooperate.  It further ruled that impeachment would be improper because the prejudice to Alford outweighed any probative value.  The court then ordered Jones's testimony from the previous day to be stricken from the record in its

entirety.  The jury was instructed to disregard the testimony and was examined by voir dire individually to ensure each juror could comply with the trial court's instructions.  While the prosecution disagreed with the court's solution, Alford explicitly concurred in the ruling.  He did not move for a mistrial.

## STANDARD OF REVIEW

"Under Rule 52(b), for a plain error to affect substantial rights, 'the error must have been prejudicial: It must have affected the outcome of the District Court proceedings.'" *United States v. Thomas*, 1994 U.S. App. LEXIS 2625, *14-15 (6th Cir. 1994) (citing *United States v. Olano*, 507 U.S.  725, 734 (1993)).  This rule "normally requires the same kind of inquiry [as harmless error under Rule 52(a)], with one important difference: It is the defendant rather than the Government who bears the burden of persuasion with respect to prejudice.  In most cases, the Court of Appeals cannot correct the forfeited error unless the defendant shows the error was prejudicial." *Id*. (internal citations omitted).  Even if testimony were "erroneously admitted, the striking of the [testimony] with instructions to the jury to disregard it will ordinarily cure the error." *United States v. Ursery*, 109 F.3d 1129, 1133 (6th Cir. 1997).

## DISCUSSION

Alford alleges the prosecution knew Jones would not support her prior written statement, and that she was called solely to introduce it into evidence under the guise of "impeachment."  The district court determined that the government acted in good faith when originally calling Jones, but that it could no longer believe she  would testify in conformity with the prior statement.  Thus, if the impeachment continued, the jury would be left with no substantive testimony from her.

Although the impeachment of Jones was improper, this error was correctable and was, in fact, corrected.  "The general rule is that the subsequent striking of erroneously admitted evidence accompanied by a *clear and positive instruction to disregard it cures the error* unless the evidence is of such an exceptionally prejudicial character" that the jury cannot ignore it. *Barbara v. Johnson*, 449 F.2d 1235, 1237 (6th Cir. 1971) (emphasis added).  "Thus, unless there is a reasonable possibility that the improperly admitted evidence contributed to the conviction, reversal is not required." *Schneble v. Florida*, 405 U.S. 427, 432 (1972).  Here, all of the evidence, with the possible exception of the recovery of the robber's bag, could be tied to Alford even without the help of Jones's prior statement.

Once the district court reviewed the matter and heard arguments in conference from both parties on the admissibility of Jones's testimony, it examined Jones regarding her prior statement.  After instructing the jury to disregard the previous testimony, the court took the extraordinary action of individually questioning jurors to determine if each could disregard what he or she had heard. "Notwithstanding the undoubtably prejudicial nature of the erroneously admitted information, this Court must assume that the jury in this case followed the instruction given to it by the court." *Shanklin v. Norfolk Southern Railway Co.*, 369 F.3d 978, 991 (6th Cir. 2004).  This assumption is supported by the affirmative answer of each juror that he or she could understand and follow the curative instruction, leading to the conclusion that the improperly admitted evidence did *not* contribute to the conviction.

A mistrial should be declared only if the "evidence were so prejudicial that the jury could not be trusted to disregard it." *Ursery*, 109 F.3d at 1133-34.  Here, "even if the challenged testimony

could be deemed prejudicial, its effects were cured by the cautionary instructions of the court.

[Alford] has failed to establish that he was deprived of his constitutional right to a fair trial."

*Barbara*, 449 F.2d at 1237-38.  Alford acquiesced in the cure by not requesting a mistrial.

**AFFIRMED**.