**BEACH, Appellant,**

v.

**McANINCH, Warden, et al., Appellees.**

[Cite as *Beach v. McAninch* (1996), 111 Ohio App.3d 667.]

Court of Appeals of Ohio,
Fourth District, Ross County.

No. 95CA2152.

Decided June 14, 1996.

---

*Thomas Beach*, pro se.

*Betty D. Montgomery*, Attorney General, and *Charles L. Wille*, Assistant Attorney General, for appellees.

HARSHA, Judge.

This is an appeal from a judgment entered by the Ross County Court of Common Pleas dismissing a petition for a writ of habeas corpus filed by Thomas Beach against Fred McAninch, Warden of the Chillicothe Correctional Institute.

Appellant assigns the following errors for our review:

"I. Trial court refused to consider the facts that appellant was willing to return to Ohio and had signed waiver of extradition in 1987. Such was prejudicial.

"II. Trial court abused its discretion to the prejudice of appellant by failing to take notice that appellant was not contesting the indictment, for in reality there was no indictment. Appellant was claiming that the Common Pleas Court of

Hamilton County, Ohio, had no jurisdiction to proceed with the original trial of Thomas Beach, for there was no indictment.

"III. Trial court failed to the prejudice of appellant by refusing to consider the sorry and confused state of the record submitted by appellee, which gives several dates of parole, showed two separate documents bearing date of December 24, 1991 by two distinct and separate 'Chiefs Ohio Parole Authority.'

"IV. Trial court failed to the prejudice of appellant by refusing to give due weight to the decisions of the North Carolina courts."

On July 12, 1973, appellant was indicted in Hamilton County, Ohio, on charges of rape, abduction for immoral purposes, and felonious assault. He was subsequently convicted of the first two charges. The trial court sentenced appellant to concurrent terms of four to twenty-five years on the rape conviction and three to twenty years on the abduction conviction. He began serving this sentence in the Chillicothe Correctional Institute on February 26, 1975.

After serving seven years of his sentence, appellant was granted parole, effective April 26, 1982, in order to live with his sister in Fayetteville, Cumberland County, North Carolina.[1] Appellant signed a parole agreement in which he agreed to be bound by several conditions of parole, one of which provided:

"5. Follow all instructions given you by your Parole Officer or other officials of the Adult Parole Authority and abide by any special conditions imposed by the Adult Parole Authority."

The only special condition imposed on appellant stated: "NORTH CAROLINA ONLY."

Shortly after his parole to North Carolina, appellant was arrested by the Cumberland County Sheriff's Department for hitting a twelve-year-old girl and an eight-year-old boy on their heads with a rubber mechanic's mallet. He was charged with two felony counts of assault with a deadly weapon that inflicted serious injury. Appellant subsequently pled guilty to two misdemeanor counts of assault with a deadly weapon. On March 7, 1983, appellant was sentenced on one count to two years in prison. On March 9, 1983, appellant was sentenced on the second count to serve an additional consecutive term of two years in prison.

After learning of these convictions on April 7, 1983, the Ohio Adult Parole Authority ("OAPA") declared appellant to be a parole violator, effective March 7, 1983. On the same day it made this declaration, the OAPA also issued a state warrant to the authorities in North Carolina requesting that they "arrest, detain

---

1. Appellant's parole to North Carolina was granted pursuant to Ohio's participation in the Interstate Compact as to Parolees and Probationers, codified at R.C. 5149.17.

and hold the said Thomas Mark Beach at any suitable institution to be held subject to the further action of the Adult Parole Authority."

Appellant completed his sentences on the two assault charges in May 1987. Pursuant to the OAPA warrant, however, he was not released, but was rather transported to the Warren County, North Carolina prison unit on May 31, 1987.

On June 4, 1987, the Warren County Sheriff's Department sent a teletype message to an OAPA deputy administrator regarding appellant's detention. The teletype stated, "Can you adv us when you will be able to pick this subject up? He has signed extradition papers and is incarcerated in our jail at this time." The record indicates that the OAPA did not respond to this teletype.

On June 8, 1987, the Warren County Sheriff's Department sent another teletype message to the OAPA deputy administrator regarding appellant's detention. This teletype stated, "Ref. messages and phone conversations of last week, we must have a definate [sic] date that this subject could be picked up or he will be released by the court on Wed, June 10, 1987." [2] The record further indicates that the OAPA did not respond to this teletype either.

On June 10, 1987, the Warren County District Court issued the following judgment regarding appellant's extradition to Ohio:

"The Court finds as a fact that on the 30th day of April, 1987 the defendant waived extradition to the State of Ohio. The Court further finds that the Sheriff of Warren County has contacted Ohio three times by telephone and three times by PIN and that the State of Ohio has ignored all contacts. The defendant, being before the Court on this date, the Court orders the release of the defendant on his own statement that he will go back to the State of Ohio on his own. The Court finds as a fact that Ohio is not coming after him."

The OAPA finally contacted the North Carolina authorities by letter dated October 19, 1987. This letter was in response to an April 22, 1987 communication by a North Carolina official. The OAPA's letter stated:

"We appreciate your notification in April 1987 concerning the release of subject from your Warren County Prison Unit, Warrenton, N.C. on May 31, 1987 [sic]. We are sorry we did not respond at that time. Would you please advise if he was paroled to North Carolina and if so, would you provide us with an address and if his situation is satisfactory, accept supervision of him."

On March 1, 1988, North Carolina notified Ohio that appellant's sister, with whom he was supposed to be staying under the terms of his parole agreement, had moved to an unknown address. Furthermore, on June 1, 1988, North

---

2. At the bottom of the OAPA's copy of this teletype is the following handwritten note: "released 5/31/87 to above jail on our detainer."

Carolina notified Ohio that appellant "has not appeared in any manner whatsoever. Furthermore, his whereabouts are unknown."

Nothing further was done with appellant's case until December 24, 1991. At that time, appellant's case file was reviewed, and he was upgraded to a parole violator-at-large, effective June 1, 1988. Appellant's name was then entered into the NCIC fugitive computer system.

The Fayetteville, North Carolina Police Department contacted Ohio on February 17, 1993, regarding the possible location of appellant by a city police officer. The police department requested additional descriptive information on appellant and further inquired, "Also please advise if you will extradite from Fayetteville, N.C."

On May 10, 1993, the OAPA requested an extradition requisition from the Governor's Office. The Acting Chief of the OAPA swore out an affidavit on May 20, 1993, stating that appellant "was last placed on parole April 26, 1982, and was declared to be a parole violator-at-large June 1, 1988." The Governor's Office of North Carolina notified Ohio on June 2, 1993, that Ohio's Request for Interstate Rendition of appellant would be honored.

On July 8, 1993, Ohio was notified by the Cumberland County Sheriff's Department that appellant could be picked up at any time. Appellant was finally returned to the Correction Reception Center at Orient, Ohio, on July 16, 1993.

On July 21, 1993, appellant was served with a notice for an on-site hearing. This notice indicated that appellant was alleged to have violated Rule 5 of his parole agreement by the following action: "On or about 6/8/87, or any time thereafter, you failed to make yourself available for supervision for your Ohio parole." As a result of an on-site hearing on July 30, 1993, the hearing officer found probable cause that appellant absconded supervision after his release from custody in North Carolina. The hearing officer noted that, although Ohio "dropped the ball" by failing to pick appellant up on time in 1987, appellant thereafter failed to notify parole authorities of his new address.

Appellant subsequently appeared before a panel of the Ohio Parole Board on September 1, 1993. Appellant was notified by letter dated September 20, 1993, that the parole board panel recommended that his parole be revoked and his case continued until July 1995.

Appellant filed the current petition for writ of habeas corpus on September 29, 1994. The trial court dismissed appellant's petition on October 12, 1995, and he filed his notice of appeal on October 19, 1995.

Appellant's first, third, and fourth assignments of error all challenge the basis of the trial court's decision to dismiss his petition for a writ of habeas corpus. We will consider these three assignments of error together.

Summary judgment is appropriate when the following factors have been established: (1) there is no genuine issue as to any material fact; (2) the moving party is entitled to judgment as a matter of law; and (3) reasonable minds can come to but one conclusion, and that conclusion is adverse to the party against whom the motion for summary judgment is made, that party being entitled to have the evidence construed most strongly in its favor. *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881, 883–884; *Harless v. Willis Day Warehousing Co.* (1978), 54 Ohio St.2d 64, 66, 8 O.O.3d 73, 74, 375 N.E.2d 46, 47; Civ.R. 56(C). In reviewing the propriety of a trial court's granting of summary judgment, an appellate court must independently review the record to determine if summary judgment was appropriate. Therefore, an appellate court affords no deference to the trial court's decision while making its own judgment. *Schwartz v. Bank One, Portsmouth, N.A.* (1992), 84 Ohio App.3d 806, 809, 619 N.E.2d 10, 11–12; *Morehead v. Conley* (1991), 75 Ohio App.3d 409, 411–412, 599 N.E.2d 786, 787–788.

At the outset, we note that R.C. 2725.05 limits the application of writs of habeas corpus in the following language:

"If it appears that a person alleged to be restrained of his liberty is in the custody of an officer under process issued by a court or magistrate, or by virtue of the judgment or order of a court of record, and that the court or magistrate had jurisdiction to issue the process, render the judgment, or make the order, the writ of habeas corpus shall not be allowed."

■ Therefore, habeas corpus is not available to a prisoner who has been convicted of a crime and sentenced by a court of competent jurisdiction. *Wireman v. Ohio Adult Parole Auth.* (1988), 38 Ohio St.3d 322, 322, 528 N.E.2d 173, 174; *In re Burson* (1949), 152 Ohio St. 375, 40 O.O. 391, 89 N.E.2d 651, paragraph four of the syllabus; *Johnson v. Baker* (Oct. 16, 1991), Pickaway App. No. 90CA29, unreported, 1991 WL 224168.

■ The Supreme Court of Ohio has further held that habeas corpus is generally not available to review an action taken by the OAPA. *Stahl v. Shoemaker* (1977), 50 Ohio St.2d 351, 355, 4 O.O.3d 485, 488, 364 N.E.2d 286, 288; *Sykes v. Kreiger* (1972), 32 Ohio St.2d 132, 133, 61 O.O.2d 384, 384–385, 290 N.E.2d 180, 180–181. However, such relief may be available to an alleged parole violator when the parole authorities fail to make a determination of the parole violation issue within a reasonable time. See R.C. 2967.15; *Flenoy v. Ohio Adult Parole Auth.* (1990), 56 Ohio St.3d 131, 134, 564 N.E.2d 1060, 1063–1064; *Coleman v. Stobbs* (1986), 23 Ohio St.3d 137, 23 OBR 292, 491 N.E.2d 1126, syllabus; *Turner v. Morris* (Apr. 25, 1991), Ross App. No. 1702, unreported, 1991 WL 87291. After a careful consideration of the facts of this case, however, we

hold that the parole authorities made a determination on appellant's alleged parole violation within a reasonable time.

The underlying facts in this case are analogous to the facts presented in *Byrd v. Brigano* (1993), 91 Ohio App.3d 721, 633 N.E.2d 604. In that case, Byrd was paroled by Ohio in 1984, subject to the supervision of the Tennessee parole authorities. The OAPA declared Byrd a parole violator-at-large in 1986. After being notified of Byrd's 1987 arrest in Tennessee on Ohio's fugitive warrant, Ohio declined to extradite Byrd, and he was subsequently released. In 1992, Byrd pled guilty to a domestic violence assault offense in Tennessee, and the OAPA initiated extradition proceedings against him. Byrd was returned to Ohio on April 5, 1992, and his parole was revoked after a probable cause hearing on July 17, 1992. He then filed a petition for a writ of habeas corpus, which was dismissed by the trial court.

Byrd's argument on appeal was that the OAPA's failure to proceed with reasonable diligence to revoke his parole when it became aware of his initial parole violation in 1986 resulted in a waiver of the violation and the OAPA's loss of jurisdiction. The appellate court reasoned that Byrd's constitutional analysis was misplaced because he was actually returned to Ohio based not upon his alleged 1986 violation, but, rather, his 1992 domestic violence assault conviction, which constituted "a fresh violation of his parole." *Id.*, 91 Ohio App.3d at 723, 633 N.E.2d at 606. Therefore, "[o]nly if Ohio was attempting to hold [Byrd] on the basis of the 1986 [parole violator-at-large] warrant would [Byrd] be entitled to a hearing to determine if Ohio acted with reasonable diligence and thus retained jurisdiction." *Id.*, 91 Ohio App.3d at 723–724, 633 N.E.2d at 606. Instead, the appellate court affirmed the trial court's judgment that there was no unreasonable delay between the fresh parole violation and the probable cause hearing.

Likewise, in this case, Beach was paroled by Ohio in 1982, subject to the supervision of the North Carolina parole authorities. The OAPA declared Beach a parole violator, effective as of 1983, after Beach pled guilty to two counts of assault with a deadly weapon. Although notified that Beach was in custody in 1987 in North Carolina on Ohio's parole violation warrant, Ohio declined to transport Beach back to Ohio, and he was subsequently released. The OAPA then declared Beach a parole violator-at-large in 1988, after the North Carolina authorities informed the OAPA that appellant's whereabouts were unknown. In 1993, Beach was located in North Carolina, and the OAPA promptly initiated extradition proceedings against him. Beach was returned to Ohio on July 16, 1993, a probable cause hearing was held on July 30, 1993, and his parole was revoked following a final parole violation hearing on September 1, 1993.

After considering these facts, we hold that appellant was actually returned to Ohio based, not upon his 1983 assault convictions, but, rather, a fresh violation of

his parole, *i.e.*, his failure to make himself available for parole supervision after June 1, 1988. This conclusion is reinforced by the OAPA's October 19, 1987 letter to the North Carolina officials. This letter demonstrates Ohio's willingness to continue appellant's parole, despite his assault convictions, under North Carolina supervision. Finally, appellant's status was not upgraded to "parole violator-at-large" until after the OAPA was notified by North Carolina that he "has not appeared in any manner whatsoever" and that "his whereabouts are unknown." [3] Therefore, after independently reviewing appellant's habeas corpus petition, we find no error with the trial court's judgment that appellee was entitled to judgment as a matter of law. Accordingly, appellant's first, third, and fourth assignments of error are overruled.

According to appellant's second assignment of error, the original trial court in this matter was without jurisdiction because the charging language contained in the indictment was neither in accordance with, nor substantially equivalent to, the cited statutes. For the following reason, we decline to address the merits of this assignment of error.[4]

The Supreme Court of Ohio has expressly held that a petition for a writ of habeas corpus is not available to challenge either the validity or the sufficiency of an indictment. *Luna v. Russell* (1994), 70 Ohio St.3d 561, 562, 639 N.E.2d 1168, 1169, certiorari denied (1995), 513 U.S. 1094, 115 S.Ct. 759, 130 L.Ed.2d 658. Appellant possessed an adequate legal remedy by direct appeal to raise any such contentions. Accordingly, appellant's second assignment of error is overruled.

We affirm the judgment of the Ross County Court of Common Pleas.

*Judgment affirmed.*

PETER B. ABELE, P.J., and KLINE, J., concur.

---

3. See, also, *Kirby v. Alexander* (Mar. 16, 1992), Madison App. No. CA91–06–020, unreported, 1992 WL 50037, upholding the OAPA's jurisdiction to revoke parole when the seven-year delay between the violation and the extradition was due to the alleged violator's unknown location during that entire period of time.

4. For purposes of clarification only, appellant was indicted on July 12, 1973, on charges of rape in violation of R.C. 2905.01, abduction for immoral purposes in violation of 2901.31, and felonious assault in violation of R.C. 2901.24.

   The current rape statute, R.C. 2907.02. repealed the former version, R.C. 2905.01, effective January 1, 1974. The crime of kidnapping is now found in R.C. 2905.01.

   The current kidnapping statute, R.C. 2905.01, repealed the former abduction for immoral purposes, R.C. 2901.31, effective January 1, 1974. The current version of R.C. 2901.31 concerns the cooperation in national information efforts to identify unidentified deceased persons and locate missing children.

   The current felonious assault statute, R.C. 2903.11, repealed the former version, R.C. 2901.24, effective January 1, 1974. The current version of R.C. 2901.24 concerns the personal accountability of individuals for the criminal conduct of organizations.