[Cite as *Alford v. Crutchfield*, 2016-Ohio-7295.]

IN THE COURT OF APPEALS

TWELFTH APPELLATE DISTRICT OF OHIO

WARREN COUNTY

BRIAN KEITH ALFORD, :

        Petitioner-Appellant, :

  - vs -

GEORGE CRUTCHFIELD, WARDEN, :

        Respondent-Appellee. :

CASE NO. CA2016-03-021

O P I N I O N
10/11/2016

CIVIL APPEAL FROM WARREN COUNTY COURT OF COMMON PLEAS
Case No. 15CV87458

Brian Keith Alford, #A196744, London Correctional Institution, P.O. Box 69, London, Ohio 43140, appellant, pro se

Jonathan Khouri, Assistant Attorney General, Criminal Justice Section, 615 West Superior Avenue, 11th Floor, Cleveland, Ohio 44113, for appellee

**S. POWELL, J.**

{¶ 1} Petitioner-appellant, Brian Keith Alford, appeals from the decision of the Warren County Court of Common Pleas denying his petition for a writ of habeas corpus. For the reasons outlined below, we affirm.

**Facts and Procedural History**

{¶ 2} On March 27, 1984, Alford was sentenced to serve an aggregate term of 14 to

70 years in prison after he was convicted in the Montgomery County Court of Common Pleas for three counts of robbery and one count of aggravated robbery with a firearm specification. After serving nearly 16 years in prison, Alford was granted parole and released from prison on December 23, 1999.

{¶ 3} On June 6, 2000, a complaint was filed in the United States District Court for the Southern District of Ohio, Western Division, charging Alford with armed bank robbery and use of a firearm in a crime of violence. That same day, the Ohio Adult Parole Authority ("OAPA") declared Alford to be a "violator at large." Alford was subsequently arrested on June 22, 2000 and later indicted on those charges by a federal grand jury approximately three weeks later on July 11, 2000.

{¶ 4} On February 28, 2002, a jury returned a verdict finding Alford guilty as charged. Several months later, on December 12, 2002, Alford was sentenced to serve a total of 144 months in federal prison with a tentatively scheduled release date for good behavior on December 5, 2010.[1] As a result of Alford's conviction, on January 28, 2003, OAPA declared Alford a "violator in custody" and issued a state warrant for Alford's arrest as a "release violator." Thereafter, on March 21, 2003, OAPA forwarded the state warrant to the federal prison where Alford was incarcerated and requested that a detainer be placed in Alford's file.

{¶ 5} After he received notice of the state warrant and detainer, Alford contacted OAPA several times between August 22, 2003 and March 13, 2005 requesting the warrant and detainer be removed and that he be released from parole. In response, on April 5, 2005 and again on August 8, 2005, OAPA informed Alford that the state warrant and detainer would remain in place until he completed his federal prison sentence and became available to the state so that a parole revocation hearing could be conducted. Specifically, as OAPA

---

1. The United States Sixth Circuit Court of Appeals subsequently affirmed Alford's conviction on direct appeal in *Alford v. United States*, 116 Fed.Appx. 706 (6th Cir.2004).

stated in its August 8, 2005 letter to Alford:

> When you have completed your period of incarceration with the federal Bureau of Prisons, you will be returned to the State of Ohio to face charges of violating supervision. Within days of your return, you will receive a copy of the Notice of Hearing which will include the time and date of your hearing and the list of the alleged supervision violation(s) which will cite the conditions of supervision that may have been violated. At the conclusion of the hearing, a written notice of finding will [be] issued and if applicable, a written sanction order will also be issued.
>
> The State of Ohio does not conduct hearings in absentia, therefore, the documents described above are produced only during the hearing process. You must be available to the state of Ohio before the hearing process can be initiated. As you are presently serving a period of confinement and are out of the state you are not available.

{¶ 6} On January 7, 2011, Alford was released from federal prison and returned to the state under OAPA's supervision. That same day, OAPA restored Alford to "parole status" with a new maximum sentence date of June 4, 2067. Approximately one week later, on January 13, 2011, OAPA provided Alford with notice regarding his parole violation hearing scheduled for February 7, 2011. Following this hearing, and due to his convictions in federal court for armed bank robbery and use of a firearm in a crime of violence, Alford's parole was revoked. Although proclaiming his innocence, the record indicates Alford readily acknowledged that he had been convicted of these charges. The record also indicates Alford "waived counsel at hearing based on denial of representation following *Gagnon* screening."[2] Alford was then ordered to serve an additional 18 months in prison before he would again be eligible for parole release consideration. Since that time, Alford has twice been denied parole with his next parole hearing scheduled for May 1, 2017.

---

2. A "*Gagnon* screening" refers to the United States Supreme Court's decision in *Gagnon v. Scarpelli*, 411 U.S. 778, 93 S.Ct. 1756 (1973), which held that the decision regarding the need to appoint counsel for a parolee at a parole revocation hearing "must be made on a case-by-case basis in the exercise of a sound discretion by the state authority charged with responsibility for administering the probation and parole system." *Id.* at 790.

{¶ 7} On July 9, 2015, Alford filed a petition with the trial court seeking a writ of habeas corpus. In support, Alford argued that OAPA improperly denied him a parole revocation hearing between June 22, 2000, the date he was arrested on federal charges of armed bank robbery and use of a firearm in a crime of violence, and December 12, 2002, the date the federal court sentenced him to serve a total of 144 months in federal prison. According to Alford, OAPA's failure to hold a parole revocation hearing during this time created an unreasonable delay that violated his due process rights and required his immediate release from prison and reinstatement to his prior parole status. Alford also argued that OAPA was incorrect in failing to provide him with appointed counsel at his subsequent parole revocation hearing conducted on February 7, 2011.

{¶ 8} On August 10, 2015, respondent-appellee, George Crutchfield, the warden for the Warren Correctional Institute where Alford was incarcerated, responded to Alford's petition by filing a motion to dismiss, or, in the alternative, a motion for summary judgment. As relevant here, on January 28, 2016, a magistrate issued a decision granting the warden's motion for summary judgment, thereby denying Alford's petition for a writ of habeas corpus. In so holding, the magistrate determined that even if the delay in holding the parole revocation hearing was unreasonable, Alford could not demonstrate any resulting prejudice. The magistrate also determined that Alford had no right to appointed counsel because the parole revocation hearing did not involve any "especially difficult or complex issues" as it was "merely a formal acknowledgment" that he had been convicted on the federal charges while on parole. Alford then filed objections to the magistrate's decision, which the trial court subsequently denied on March 14, 2016.

**Alford's Appeal from the Trial Court's Decision**

{¶ 9} Alford now appeals, raising three assignments of error for review that reiterate the same arguments he alleged in his petition for a writ of habeas corpus; namely, (1) that

- 4 -

OAPA created an unreasonable delay and violated his due process rights by not holding his parole revocation hearing within a reasonable time after he was arrested on June 22, 2000 but before he was sentenced December 12, 2002; and (2) that OAPA was incorrect in failing to provide him with appointed counsel during his subsequent parole revocation hearing conducted on February 7, 2011.

## Summary Judgment Standard of Review

{¶ 10} Although arguing that he is entitled to a writ of habeas corpus, Alford's appeal arises from the trial court's decision affirming and adopting the magistrate's decision granting the warden's motion for summary judgment. "A court of appeals reviews the decision on whether to grant summary judgment in a habeas corpus proceeding as it would in any other civil summary judgment action." *Barnett v. Houk*, 12th Dist. Madison No. CA2004-01-001, 2004-Ohio-6482, ¶ 7, citing *Horton v. Collins*, 83 Ohio App.3d 287, 291 (9th Dist.1992). This court reviews summary judgment decisions de novo. *Arnet v. Mong*, 12th Dist. Fayette No. CA2015-10-022, 2016-Ohio-2893, ¶ 6. In applying the de novo standard, this court is required to "us[e] the same standard that the trial court should have used, and * * * examine the evidence to determine whether as a matter of law no genuine issues exist for trial." *Bravard v. Curran*, 155 Ohio App.3d 713, 2004-Ohio-181, ¶ 9 (12th Dist.).

## Petition for a Writ of Habeas Corpus

{¶ 11} A writ of habeas corpus is an extraordinary remedy available where there is an unlawful restraint of a person's liberty and no adequate remedy at law. *Maxwell v. Jones*, 12th Dist. Butler No. CA2009-07-179, 2010-Ohio-1633, ¶ 7. Habeas corpus is generally appropriate in the criminal context only if the petitioner is entitled to immediate release from prison. *Powers v. Timmerman-Cooper*, 12th Dist. Madison No. CA2013-01-002, 2013-Ohio-2865, ¶ 10, citing *Larsen v. State*, 92 Ohio St.3d 69 (2001). In turn, habeas corpus is "not the proper remedy to address every concern a prisoner has about his legal rights or status."

*Rodgers v. Capots*, 67 Ohio St.3d 435, 436 (1993). However, habeas corpus will lie to challenge a decision of the OAPA in extraordinary cases involving parole revocation. *State ex rel. Jackson v. McFaul*, 73 Ohio St.3d 185, 187 (1995). This occurs most notably "when the parole authorities fail to make a determination of the parole violation issue within a reasonable time." *Beach v. McAninch*, 111 Ohio App.3d 667, 672 (4th Dist.1996).

### Unreasonable Delay to Conduct a Parole Revocation Hearing

{¶ 12} As noted above, Alford initially argues that he is entitled to a writ of habeas corpus because OAPA created an unreasonable delay and violated his due process rights by not holding his parole revocation hearing within a reasonable time after he was arrested on June 22, 2000 but before he was sentenced in federal court on December 12, 2002. We disagree.

{¶ 13} As applicable here, at the time Alford was granted parole and subsequently arrested on charges of armed bank robbery and use of a firearm in a crime of violence, R.C. 2967.15(B) stated:

> Except as otherwise provided in this division, prior to the revocation by the adult parole authority of a person's pardon, parole, transitional control, or other release and prior to the imposition by the parole board or adult parole authority of a new prison term as a post-release control sanction for a person, the adult parole authority shall grant the person a hearing in accordance with rules adopted by the department of rehabilitation and correction under Chapter 119. of the Revised Code.

That provision also stated:

> If the authority fails to make a determination of the case of a parolee or releasee alleged to be a violator of the terms and conditions of the parolee's or releasee's conditional pardon, parole, other release, or post-release control sanctions within a reasonable time, the parolee or releasee shall be released from custody under the same terms and conditions of the parolee's or releasee's original conditional pardon, parole, other release, or post-release control sanctions.

{¶ 14} Contrary to Alford's claim otherwise, "there is no ten-day or sixty-day rule entitling parolees to habeas corpus relief upon expiration of such period; instead, the applicable test is whether there has been an unreasonable delay in holding a parole-revocation hearing." *State ex rel. Spann v. Mitchell*, 82 Ohio St.3d 416, 417, citing *Seebeck v. Zent*, 68 Ohio St.3d 109, 110 (1993). Rather, as noted by the Ohio Supreme Court, "[a] court should apply a two-part test in determining whether the delay of the [OAPA], in not commencing a final parole revocation hearing, entitles an alleged parole violator to habeas corpus relief." *Coleman v. Stobbs*, 23 Ohio St.3d 137, 139 (1986).

{¶ 15} First, it must be determined whether any delay was unreasonable. This involves the consideration and balancing of three factors: (1) the length of the delay, (2) the reasons for the delay, and (3) the alleged parole violator's assertion of his right to a hearing within a reasonable period of time. *Id.* Second, if the delay is found to be unreasonable, it must then be determined whether the delay somehow prejudiced the alleged parole violator. The factors to be considered in determining whether the petitioner was prejudiced are (1) prevention of oppressive prehearing incarceration, (2) minimization of anxiety and concern of the alleged parole violator and, (3) limitation of the possibility that delay will impair the alleged parole violator's defense at his final parole revocation hearing. *State ex rel. Taylor v. Ohio Adult Parole Auth.*, 66 Ohio St.3d 121, 128 (1993).

{¶ 16} After a thorough review of the record, we find Alford was not subject to an unreasonable delay resulting from the OAPA not commencing his parole revocation hearing until after Alford was released from federal prison. In so holding, we note that the United States District Court for the Northern District of Ohio already rejected this very claim as part of its decision denying Alford's petition for a writ of habeas corpus in *Alford v. Shartle*, N.D.Ohio No. 4:08CV1963 (Nov. 4, 2008), a decision the United States Sixth Circuit Court of

Appeals later affirmed.[3]  As part of that decision, the district court, citing to the United States Supreme Court's decision in *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593 (1972), stated:

> While the Court [in *Morrissey*] noted that this revocation hearing must be held within a "reasonable time after the parolee is taken into custody," Mr. Alford is not presently in the custody of the State of Ohio.  It is only at that time when he will be entitled to be heard and present evidence showing he did not violate his parole conditions, or, if he did, what circumstances in mitigation suggest the violation does not warrant revocation.  Due process is satisfied if the procedures followed by the parole board comply with the minimum standards set forth in *Morrissey*.

(Internal citations omitted.)

{¶ 17} This is the exact same notice OAPA provided to Alford on both April 5, 2005 and August 8, 2005 in response to Alford's requests that the state warrant and detainer be removed and that he be released from parole.  "The United States Supreme Court has held that it is constitutional to wait to hold a parole revocation hearing until after a prisoner has completely served an intervening sentence."  *Matter of Byrd*, 12th Dist. Madison No. CA89-08-015, 1990 WL 59222, *3 (May 7, 1990), citing *Moody v. Daggett*, 429 U.S. 78, 97 S.Ct. 274 (1976).

{¶ 18} Moreover, under both the former and current versions of R.C. 2967.15(B), because Alford's parole revocation was based on his conviction in federal court for armed bank robbery and use of a firearm in a crime of violence, OAPA was not required to grant Alford a preliminary hearing on the matter.  Specifically, as former R.C. 2967.15(B) stated:

> The adult parole authority is not required to grant the person a hearing if the person is convicted of or pleads guilty to an offense that the person committed while released on a pardon, on parole, transitional control, or another form of release, or on post-release control and upon which the revocation of the person's pardon,

---

3. Although seemingly unavailable online, the state attached the district court's decision in *Alford v. Shartle*, N.D.Ohio No. 4:08CV1963 (Nov. 4, 2008) as Exhibit C to its motion for summary judgment submitted to the trial court.

parole, transitional control, other release, or post-release control is based.

Except for the removal of the term "transitional control" within this provision, the current version of R.C. 2967.15(B) is identical to that of its predecessor. Therefore, we find the delay, if any, simply cannot be characterized as unreasonable.

{¶ 19} Regardless, just as the trial court found, even if we were to assume Alford was subjected to an unreasonable delay, Alford cannot demonstrate any resulting prejudice. This case is analogous to our decision in *Harrison v. Ohio Adult Parole Authority*, 12th Dist. Warren No. CA98-09-117, 1999 WL 160959 (Mar. 22, 1999). In that case, the petitioner was sentenced to serve a term of five to 25 years in prison after he was convicted of three counts of aggravated burglary. After serving four years in prison, petitioner was released on parole. However, shortly after his release, petitioner was convicted and sentenced to serve an additional prison term resulting from four new felony offenses he committed while on parole.

{¶ 20} Following his conviction for these new offenses, and while he was still incarcerated on these new charges, petitioner filed a petition for a writ of habeas corpus alleging he was entitled to be released from parole since OAPA failed to conduct a parole revocation hearing within a reasonable time. The trial court denied the petition and the petitioner then appealed. In affirming the trial court's decision, and even when assuming petitioner was correct in his assertion that there was an unreasonable delay by the OAPA in conducting his parole revocation hearing, this court stated:

> Appellant was convicted of committing four new crimes while on parole and was sentenced to four new and distinct terms of incarceration. Thus, he was incarcerated during the period of delay which he complains of as being unreasonable for more than a simple parole violation. Notwithstanding any parole revocation, appellant was also being lawfully held under separate convictions for the crimes he committed [shortly after being released on parole]. Accordingly, we fail to see how appellant was prejudiced by the adult parole authority's failure, if any, to timely consider whether he violated his parole.

{¶ 21} In this case, just like the petitioner in *Harrison*, Alford was released on parole and subsequently convicted of new charges that resulted in him being sentenced to federal prison. In turn, just as the petitioner in *Harrison*, Alford was incarcerated for more than a simple parole violation during the period of time he believes constitutes an unreasonable delay. However, as noted above, the United States Supreme Court has held that it is constitutional to wait to hold a parole revocation hearing until after a prisoner has completely served an intervening sentence. Moreover, neither the former or current version of R.C. 2967.15(B) required OAPA to conduct a preliminary hearing under these circumstances.

{¶ 22} Alford also failed to allege sufficient facts to establish prejudice. As noted above, although proclaiming his innocence, the record indicates Alford readily admitted that he had been convicted in federal court for armed bank robbery and use of a firearm in a crime of violence at his February 7, 2011 parole revocation hearing. The mere fact that he was convicted of these charges constitutes a clear violation of the conditions of Alford's parole. Although Alford claims otherwise, "a parolee cannot relitigate issues determined against him in other forums, as in the situation presented when the revocation is based on conviction of another crime." *Morrissey*, 408 U.S. at 490. Therefore, just as the trial court found, and for which we agree, Alford was not "entitled to re-litigate the merits of his federal case before the [OAPA]." *See State ex rel. Stamper v. Ohio Adult Parole Authority*, 62 Ohio St.3d 85, 86 (1991). Accordingly, Alford's first argument is without merit.

### Right to Appointed Counsel at Parole Revocation Hearing

{¶ 23} Next, Alford claims the OAPA was incorrect in failing to provide appointed counsel during his parole revocation hearing conducted on February 7, 2011. However, as the record indicates, Alford "waived counsel at hearing based on denial of representation following *Gagnon* screening." Yet, even if Alford had not waived counsel, it is well-established that the appointment of counsel may only be available in parole revocation

proceedings that involve "substantial, complex, or difficult factors which would have entitled him to counsel." *McFaul*, 73 Ohio St.3d at 187, citing *Stamper* at 87-88.

{¶ 24} In this case, the parole revocation hearing at issue did nothing more than establish the mere fact that Alford had been convicted in federal court on new charges while on parole. As noted by the United States Supreme Court:

> In most cases, the probationer or parolee has been convicted of committing another crime or has admitted the charges against him. And while in some cases he may have a justifiable excuse for the violation or a convincing reason why revocation is not the appropriate disposition, mitigating evidence of this kind is often not susceptible of proof or is so simple as not to require either investigation or exposition by counsel.

*Gagnon*, 411 U.S. 778, 787, 93 S.Ct. 1756 (1973).

{¶ 25} That is certainly the case here, as nothing about this hearing involved substantial, complex, or difficult factors that would have necessitated Alford being appointed counsel. In other words, as the trial court properly found, the February 7, 2011 parole revocation hearing did not involve any "especially difficult or complex issues" as it was "merely a formal acknowledgment" that Alford had been convicted on the federal charges while on parole. We find no error in the trial court's decision. Therefore, Alford's second argument is likewise without merit.

### Conclusion

{¶ 26} In light of the foregoing, and having found no merit to either of Alford's claims raised herein, we find no error in the trial court's decision granting the warden's motion for summary judgment, thereby denying Alford's petition for a writ of habeas corpus. Alford's three assignments of error are overruled.

{¶ 27} Judgment affirmed.

PIPER, P.J., and RINGLAND, J., concur.